THE FANNIE TUTHILL and others.

*(District Court, N. D. Ohio, E. D. 1883.)*

1. COLLISION OF VESSELS—DAMAGES.

   Where a vessel has been damaged by a collision the owner is entitled to recover as damages whatever sum is found necessary to restore his vessel to the same degree of efficiency and usefulness as existed before the collision took place, notwithstanding that in such restoration new and more valuable material is used; nor is the sum actually contracted to be paid in the making of such repairs, though *prima facie* the measure of the sum, necessarily conclusive. Yet no sum greater than that actually expended should be allowed, in the absence of any claim by the shipwright for more compensation.

2. SAME—DEMURRAGE.

   The injured party may recover for the loss of the use and services of his vessel during the period required for her repairs; but it should only include the minimum time required for that purpose, and this should fall within the season of navigation, or within a time in which, but for the injury, his vessel could have been properly used.

3. SAME—TOWAGE AND DOCKAGE.

   Expenditures for towage or dockage made necessary wholly by the collision, also constitute a rightful claim for damages.

In Admiralty.

This was a suit to recover damages arising from a collision of the barge Harvest with libelants' vessel, the schooner Minnie Davis, while the barge was being towed by the tug Tuthill. On trial the tug and barge were found to be equally in fault, and a decree rendered accordingly. The cause was referred to Earl Bill, a circuit court commissioner, to take testimony and report to the court the damages of libelants arising from the collision.

Omitting the formal parts, the commissioner reported as follows:

In arriving at the conclusions of this report, from the facts shown in the testimony, the undersigned assumes as a legal principle that, as the collision is in the nature of a tort, the wrong-doer is bound by law to pay to the injured party, as damages, whatever sum is found necessary to restore his vessel to the same degree of efficiency and usefulness as existed before the collision took place, notwithstanding that in such restoration new and therefore more valuable material is used, and that for such difference in value no allowance should be made; and further, that while the sum actually contracted to be paid in the making of such repairs is, *prima facie*, the measure of the sum so necessary, it is not conclusive, for either the work may be contracted to be done for much less than the actual value, on the one hand, or, by collusion, an inordinately large sum may be contracted for. In the one case the contractor, and in the other the wrong-doer, would suffer injustice by the rigid enforcement of such a rule of damages. But any departure from it should only be taken with much care. and evidence of inadequacy should be severely scrutinized.

The right of the injured party to be indemnified for the loss of the use and service of his vessel during the period required for making his repairs is also recognized; but it should only include the minimum time required for that purpose, and this should fall wholly within the season of navigation, or within which, but for the injury, his vessel could have been profitably used. The value of such use and service is, in general, best proven by showing from the vessel's books what her earnings had been prior to the collision, and her current expenses, thus affording the means of estimating her net revenue.

Expenditures for towage, made necessary wholly by the collision, will also constitute a rightful claim for damages on the part of the libelants.

Guided by these principles the undersigned finds from the testimony—

That libelants contracted with one Lant, a ship-carpenter, for the repair of so much of the injury to their vessel by said collision as was inflicted upon her stern, for the sum of $400, not including the expense of dockage to the amount of 20 cents per ton of the vessel. It is somewhat difficult to determine, from a perusal of this contract, whether it was intended by the parties to it to include a complete restoration of the vessel, so far as the after-part of it was concerned, to its condition prior to the collision, or only the items of work and materials particularly specified in it. But, in the view taken of the matter by the undersigned, it is deemed unnecessary to pursue the inquiry. Lant proceeded with the work under it, and as he had, in the judgment of persons to whom the question was submitted, performed more than the contract required in the sum of $80, that sum was paid him by libelants' agent, in addition to the $400 stipulated in the contract.

Certain bills for materials, amounting to $31.02, were also paid by libelants, as to which it might be said that they were within the terms of the contract of Lant. It is also claimed that services were rendered by the master of the injured vessel while the repairs were going on, by way of superintendence of the work. There is also testimony showing payment by libelants on account of other materials used in the repairs, to the amount of $42.25. The items thus enumerated amount to the sum of $553.27. But it appears from the testimony, to the satisfaction of the undersigned, that the estimate of said Lant made prior to the execution of his contract, as to the outlay necessary for restoring said vessel to its condition of usefulness and efficiency, was erroneous and insufficient by reason of the decayed condition of the timbers, whereby it became necessary to extend the repairs to points beyond those to which they would of necessity have been carried had the unbroken parts been sound, in order to a secure fastening of the parts added by way of repair; such decayed and rotten condition being unknown to said Lant. If the fact of the rottenness was known to libelants and not disclosed or

apparent on inspection, there is at least a moral, if not a legal, obligation on the part of libelants to compensate Lant for his losses in the performance of his contract.

In the light of these facts the contract price ceases to be a true measure of libelants' damages, and we are to look to other means for their ascertainment, to-wit, the testimony of the experts as to the actual expense necessary to restore the vessel, as to her injuries at her stern, to its condition of usefulness and efficiency; and also to take into consideration the facts and circumstances developed in the actual making of the repairs aforesaid. As the estimates of witnesses who testified on this point have a range of from $130 to $800, the undersigned is compelled to rely greatly upon the opinion of the witness Lant, who did the work, and had, therefore, the most complete means of knowing the true value. His estimate is from $600 to $800, and is most nearly in accord with that of those witnesses (other than himself) whose skill, means of knowledge, and disinterestedness invite the confidence of the commissioner. Such true value is, therefore, found to be $700.

It is claimed that in making the repairs aforesaid the new work was extended beyond any necessity caused by the collision, by the insertion of new materials in place of old not injured or broken, thereby wrongfully enhancing the expense, and that the estimates of Lant, and the other witnesses last referred to, are tainted with the same infirmity. In repairing injuries to an old vessel whose timbers are decayed, it is difficult to fix, by testimony, at least, the true line where the insertion of new material should cease; and unless bad faith on the part of the injured party be shown, strict proof is required of the measure and value of the superfluous labor and materials. No evidence of bad faith appears in this case, and the undersigned is unable from the proofs to find any such excess that is susceptible of estimation.

Besides the injuries to the stern or after-part of the schooner Minnie Davis, to which the foregoing finding relates, it is found that the forward part of the vessel was injured by said collision, which libelants did not undertake to repair. The sum found necessary to make this repair is found to be $175.

It is also found that there was paid by libelants, for the use of the dock at which said schooner lay while undergoing repairs, the sum of $35, and that the same is justly chargeable as a part of their damages in this cause. Also, that they paid for towage in the Cuyahoga river, made necessary by said collision, the sum of $20 being allowed on that account. When the collision occurred the Minnie Davis was loaded with limestone, and she was cut down so nearly to the water-line that she was in danger of sinking, and the dock to which her cargo was destined by consignment being occupied, and inaccessible for the purpose of discharge of cargo, her master was compelled to proceed to another place, where he could and did discharge so much

of it as would enable him to avoid the peril of sinking. For this service, and for towage from the dock of her original destination to the place where the repairs were made, the above allowance is made.

It only remains to consider the question of demurrage, or the sum required to indemnify libelants for the loss of the use and services of their vessel during the period necessary to make the required repairs, and while the lake was still open for navigation. It is found that, although a longer time was in fact consumed, yet that 18 days were sufficient for the repair of the vessel had it been done with ordinary vigor and speed; and from the date of the collision to the close of navigation more than that number of days intervened, and in estimating the loss of service that number is adopted. Testimony as to the value of such service per day is conflicting, the range being from $8 to $30. As the books of the vessel, showing what, in fact, she had been earning, were not produced in evidence by the libelants, the commissioner is forced to rely upon the estimates of experts, or those engaged in like trade, and this kind of testimony is deemed quite unsatisfactory. As the vessel's books are esteemed to be evidence of a higher nature, this secondary proof is of necessity subject to a rigid scrutiny. On consideration of all the testimony on this point, the undersigned finds the value of said use and service at $20 per day, amounting to the sum of $360.

The sums so found on account of said repairs, towage, dockage, and demurrage, are exclusive of all other claims on said several accounts, the same being disallowed, and the aggregate of the sum so found is intended as a full indemnification for the damages done by said collision, which sums are hereby recapitulated, as follows:

| | |
|---|---:|
| For repairs of stern, | $700 00 |
| For repairs of bow, | 175 00 |
| For towage, | 20 00 |
| For dockage, | 35 00 |
| For demurrage, | 360 00 |
| Total, | $1,290 00 |

It is, therefore, found that the true amount of the damages sustained by said libelants, by reason of the collision in their libel set forth, is the aforesaid sum of $1,290, with interest thereon from the date of said collision, viz., October 25, 1880.

Respectfully submitted,

EARL BILL, Commissioner.

To which report counsel for the respondent, Patrick Smith, owner and claimant of the tug Fannie Tuthill, filed 13 exceptions; and the same having been fully argued. a decision was rendered by the court at the April term, 1883.

*Goulder & Weh,* for libelants.
*Charles L. Fish,* for owner of the Tuthill.

WELKER, J. There are 13 exceptions filed by the respondent, owner of the Tuthill, covering all the findings of the commissioner. After full argument on behalf of both parties the exceptions are overruled and the report confirmed, except as to the item of repairs made to the libelants' vessel as allowed by the commissioner, to-wit, $700, found by him to have been the reasonable value of the repairs; and as to that item the court reduce the amount to the sum of $553.27, the actual expense of the repairs as found by the commissioner. The court holds that, although the rule adopted by the commissioner constitutes the usual measure of damages, yet when it appears that the repairs were actually done for less, and no claim made for more compensation by the shipwrights who did the work, in equity such should be the measure of recovery.

Decree accordingly.