## THE BULGARIA.

### (District Court, N. D. New York. February 20, 1897.)

1. COLLISION—ELEMENTS OF DAMAGE—TOWAGE.

   The expense of towing a vessel injured by collision to a place where it was necessary to take her in order to repair her injuries, is recoverable as part of the damages.

2. SAME—COST OF SURVEY.

   The expense of a survey of a vessel injured by collision is recoverable as part of the damages against the vessel in fault.

3. SAME—DEMURRAGE—DETENTION DURING REPAIRS.

   A vessel injured by the fault of another is entitled as part of her damages to recover, as demurrage, the amount she would have earned during the period necessarily occupied in repairs, less the expense of earning it. In ascertaining this amount, where there is no charter party or market price, it is proper to take as a basis the average net profits during the trip of the collision and the trips immediately preceding and succeeding it.

4. SAME—INTEREST.

   Interest is allowable on the various items of damage recoverable in a collision case.

5. ADMIRALTY—EXCEPTIONS TO COMMISSIONER'S REPORT—OBJECTIONS TO EVIDENCE.

   Where a witness having charge of a vessel's books, testifies before a commissioner as to facts which might be shown by the books themselves, and such evidence is objected to only on the grounds that it is irrelevant and immaterial, the court, on the hearing of exceptions to the report, will not exclude the evidence as incompetent because the books were not produced.

This was a libel in rem by the Union Transit Company against the steamer Bulgaria to recover damages sustained by the steamer W. H. Stevens in collision with the Bulgaria. The court heretofore, on June 12, 1896, rendered an opinion finding the Bulgaria solely in fault. 74 Fed. 898. The cause is now heard on exceptions to the commissioner's report on the question of the amount of damages. The commissioner allowed damages as shown in the following schedule attached to his report:

Schedule A.

| Tonnage. | | | | | Net Earnings. | | |
|---|---|---|---|---|---|---|---|
| Trip. | Days. | West Bd. | East Bd. | Total. | Per Trip. | Per Day. | 8¾ Days. |
| 2 | 11 | 153 | 1,227 | 1,380 | $1,188 62 | $108 06 | $ 945 53 |
| 3 | 14 | 621 | 1,258 | 1,879 | 2,658 59 | 191 85 | 1,668 68 |
| 4 | 13½ | 626 | 1,295 | 1,921 | 440 91 | 32 62 | 285 42 |
| | | 1,400 | 3,780 | 5,180 | $4,288 12 | $332 53 | $2,899 63 |

Demurrage—Average net earnings for 8¾ days...................................... $ 966 54
Interest thereon from June 28, 1895, to date of report,—1 year, 6 months, 17 days ................................. 89 64
Add time of crew while repairs were being made:
Captain, 8¾ days, at $1,100 season (7½ mo.), $157 mo............... $12 70
Chief engineer, 8¾ days, at $103 per mo..... ...................... 30 00
2nd engineer, 4½ days, at $63 per mo.......................... 9 45
1st mate, 2½ days, at $74 per mo.................................... 6 18
2nd mate, 2½ days, at $56 per mo.................................. 4 67
2 wheelsmen, 4½ days, at $31 per mo ............................... 4 64
1 watchman, 2 days, at $27 per mo.................................. 1 80
1 cook, 2½ days, at $50 per mo..................................... 4 17
1 porter, 1½ days, at $20 per mo... .............................. 1 00
4 deckhands, at $15 per mo......................................... 2 00

106 61
Interest thereon from Nov. 27, 1895, to date of report,—1 year, 1 month, 18 days ................................................ 7 19
Bill of Maytham Tug Line................................. 42 00
Interest thereon from July 24, 1895, to date of report,—1 year, 5 months, 22 days................................................. 3 73
New line................................................ $24 00
Survey................................................. 25 00

49 00
Interest thereon from November 27, 1895, to date of report,—1 year, 1 month, 18 days ................................................ 3 34
Bill Union Dry-Dock Co ........................... 782 52
Interest thereon from December 18, 1895, to date of report, —1 year, 27 days 50 44

$2,101 01
All of the above interest at 6 per cent. per annum.

Norris Morey, for libelant.
Harvey D. Goulder, for respondent.

COXE, District Judge. I have read all the testimony and have reached the conclusion that all of the principal findings of fact in the report of the learned commissioner are correct.

Collision Damages. The amount found due the libelant for the

damages occasioned by the collision appears to be a conservative award. It represents the sum actually paid for repairs made necessary by the collision. That these repairs were necessary and the amounts paid reasonable sufficiently appears. Indeed, a much larger bill might have been incurred for the reason that in the hurry to put the vessel again at work several items of injury were hastily and not permanently repaired. Surely the testimony was sufficient to prove a prima facie case. The America, 4 Fed. 337.

Towage. The allowance of $42 for towage was proper. It appears that it was absolutely necessary to tow the Stevens as stated in the proof in order to repair the injuries resulting from the collision. The bill for these services was rightly allowed. The Fannie Tuthill, 17 Fed. 87.

Hawser. The proof submitted is insufficient to sustain the allowance of $24 for a new hawser. This is hardly disputed, but the libelant contends that the proof at the trial shows that a six-inch hawser was parted by the collision, and the brief states that the amount allowed represents the difference between the value of the old line and the new. The evidence taken at the trial has not been submitted, and after careful search I am unable to find any testimony supporting the statement of the brief. As the matter is now presented the finding rests solely upon testimony of a witness who had no personal knowledge of the collision. In any view, assuming that evidence at the trial shows all that is asserted by the libelant, it would still seem that there is insufficient proof upon which to charge the respondent with "forty-five fathoms of six-inch manilla hawser."

Survey. The item for the survey was properly allowed upon the authority of The City of Chester, 34 Fed. 429; New Haven Steamboat Co. v. Mayor, etc., 36 Fed. 716.

Wages of Crew. The latter case is also authority for allowing the sum of $106 paid the crew of the Stevens while she was repairing. The fact of the payment of this sum and the necessity therefor is sufficiently established by the libelant and is wholly uncontradicted by the respondent.

Demurrage. The Stevens was delayed at Buffalo 8¾ days during the season of navigation. This is undisputed. She is entitled to recover as demurrage what she would have earned during this period, less the expense of earning it, namely, her net profits. This proposition is also conceded. In arriving at this amount the commissioner ascertained the earnings of the Stevens by taking an average of her net profits during the trip of the collision and the trips immediately preceding and succeeding. He fixed the amount at $966.54 or $110 per day in round numbers. The court might almost take judicial knowledge of the fact, based upon a large number of cases in which the per diem value of similar vessels has been in issue, that this award is not exorbitant. If it were the respondent would have no difficulty in proving the fact. The earnings of the Bulgaria, during the same period, would furnish some criterion at least by which to estimate those of the Stevens and detect any attempt at fraud. The respondent has remained silent. There is not a word disputing the libelant's testimony.

The net earnings of the Stevens during the three trips in question were established by the testimony of the secretary and treasurer of the Union Transit Company, the libelant. He testified that he had charge of the disbursements and the receipts of freight during the time in question and that the books relating thereto were kept under his supervision and direction. It is now objected that his evidence is incompetent because the books were not produced. This objection was not taken before the commissioner; if it had been he could and probably would have ordered the production of the books. The only objections taken were that the evidence would not furnish a proper measure of damage and that it was hearsay and immaterial. Subsequently a motion to strike out was made upon the ground that the testimony was irrelevant and immaterial. The absence of the books was not referred to until the witness was recalled and then only when a motion was made to strike out certain testimony. There being no market price and no charter party it would seem that the method adopted by the libelant of proving the value of the vessel was the only one that could be resorted to. The Potomac, 105 U. S. 631. That the Stevens was in demand, that she would have received a cargo immediately but for the collision, is conclusively proved. I am inclined to think that a witness having the experience and knowledge shown by Mr. Meyers is competent to state what amount his vessel earned upon a given trip without producing all the papers and entries relating to her receipts and disbursements. But it is not necessary to decide this question for the reason that he was not requested to produce the books and papers at any time, nor was the question suggested until after the testimony had all been taken.

Interest. The commissioner was right in allowing interest. The America, 11 Blatchf. 485, Fed. Cas. No. 285; New Haven Steamboat Co. v. Mayor, etc., supra.

It follows that, after deducting item of $24 for the new line and interest thereon, the report should be confirmed and the exceptions overruled.