TWEEDIE TRADING CO. v. GEORGE D. EMERY CO.

(Circuit Court of Appeals, Second Circuit. March 26, 1907.)

No. 235.

SHIPPING—CHARTER HIRE—LOSS OF TIME FROM DEFICIENCY OF MEN.

Under a charter party which required the owner to provide the crew, and provided that, in case of loss of time from deficiency of men, the hire should cease during the detention, the charterer is entitled to a deduction of charter hire during the time the vessel was detained at quarantine in consequence of the illness and infection of the crew, and the requirement of the quarantine officers that a new crew should be shipped before she was permitted to enter the port.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 195.]

Appeal from the District Court of the United States for the Southern District of New York.

See 146 Fed. 618.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, awarding to the libelant $317.41 on account of charter hire, paid in advance, of the steamship Osceola, which was let to libelant for a round trip to and from certain named foreign ports on the agreement of charterer to pay for her use and hire £900 British sterling per month, and at the same rate for any part of a month. The owners agreed to let the vessel "with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage, and to be so maintained during the continuance of this charter party."

J. Parker Kirlin and Convers & Kirlin, for appellant.
C. S. Haight and Wheeler, Cortis & Haight, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The sole question in the case is whether under the terms of the charter it should be held that the hire ceased from April 10, 1905, at 2 p. m., when she arrived at the quarantine station, New York Harbor, until April 12, 1905, at 9:30 a. m., when she left quarantine for her berth in New York.

The vessel had sailed from Para for Barbadoes with a foul bill of health, and she sailed from Barbadoes for New York in like condition. When she reached the station, she was stopped, the quarantine flag hoisted, and part of the crew, those who were actually sick, were removed to Swinburne Island. Advised of the situation, eight men and two firemen were sent down in a towboat the next morning, arriving so early that they had to wait till the quarantine boat came off and took the rest of the crew on shore. None of the new men were allowed on board by the health authorities until the sick men and those of the crew who had been exposed to infection had all been removed. Then, about 9:30, the new men got to work and brought the ship up to her berth.

The charter provides, inter alia:

"That in the event of the loss of time from deficiency of men and stores, breakdown of machinery, stranding, fire or damage preventing the working of the vessel for more than twenty-four hours, the payment of the hire shall cease until she be again in an efficient state to resume her service."

We concur with the district judge in the conclusion that from her arrival at quarantine until the new men were put aboard a deficiency of men prevented the working of the vessel within the meaning of this clause. It is to be noted that this is not a case where, some of the crew falling sick, enough are left to bring her forward on her voyage. The whole crew by reason of exposure to some contagious disease had become disqualified from further prosecution of the voyage. None of them was able to pass beyond quarantine on board that ship. Not only the men who were actually prostrated, but the whole crew, were removed by the health officers, and they ceased to be a part of the ship's company for the prosecution of her voyage beyond quarantine as effectually as if they had died, or deserted, or been arrested as fugitives from justice or been impressed for service elsewhere. She was not in an efficient state to resume her service until she had seamen and firemen on board who could take her up to her berth. In view of the express obligation the owners entered into to maintain a full complement of seamen and firemen, and of the plain and unambiguous language of the clause above cited as to temporary ceasing of charter hire, it seems unnecessary to cite any authorities. We are not impressed with respondent's contention that, if the parties had intended to provide for suspension of hire when time was lost by reason of sickness of the men, they would have used the word "inefficiency," instead of "deficiency." The distinction is too fine. What the parties meant was that she should at all times have on board a complement of men in such condition as to put her "in an efficient state to [prosecute] her service"; and they have chosen apt words to express such intention.

The decree is affirmed, with interest and costs.