## GOW et al. v. GANS S. S. LINE.

(Circuit Court of Appeals, Second Circuit. November 9, 1909.)

### No. 83.

1. SHIPPING (§ 49*)—CHARTER HIRE—DEDUCTION FOR DEFICIENCY OF MEN.

Under a provision of a time charter for a suspension of charter hire in case of deficiency of men preventing the working of the vessel, the detention of the vessel in quarantine on account of the crew, after the vessel would otherwise have been released, constituted a constructive deficiency of men.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 49.*

Deductions and offsets from charter hire of vessel, see note to Tweedie Trading Co. v. George D. Emery Co., 84 C. C. A. 254.]

2. HEALTH (§ 24*)—QUARANTINE REGULATIONS FOR VESSELS—CONSTRUCTION—"AMERICAN."

In regulation 68(c) of the quarantine regulations, authorizing the placing in quarantine of vessels arriving between May 1st and November 1st from "a tropical American port," the word "American" is to be construed as meaning the continent of America, or the Western Hemisphere, and not the United States.

[Ed. Note.—For other cases, see Health, Dec. Dig. § 24.*

For other definitions, see Words and Phrases, vol. 1, p. 371.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Leonard Gow and others against the Gans Steamship Line. Decree for libelants, and respondent appeals. Modified and affirmed.

Wheeler, Cortis & Haight (Charles S. Haight and Clarence Bishop Smith, of counsel), for appellant.

J. Parker Kirlin and Charles R. Hickox, for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is a libel to recover $682.25, deducted by the respondent, the charterer of the steamship Vittoria, under a government form of time charter, as hire for 5 days 9½ hours detention in quarantine at Norfolk, viz., from September 11th at 6:30 a. m. to September 16th at 4 p. m. The delay is not disputed, nor that it

was caused by the United States quarantine authorities. The charter contains clauses the relevant parts of which are as follows:

"16. That in the event of loss of time from deficiency of men or stores, breakdown of machinery, stranding, or damage preventing the working of the vessel for more than 24 consecutive hours, payment of hire shall cease until she be again in an efficient state to resume her service. * * *

"17. * * * The act of God, enemies, fire, restraint of princes, ru¹ ·rs, or people, and all dangers and accidents of the seas, rivers, machinery, boilers, and steam navigation, and errors of navigation throughout this charter party always mutually excepted."

The relevant quarantine laws and regulations under which the United States quarantine authorities detained the vessel were as follows:

"68. Vessels arriving under the following conditions shall be placed in quarantine: * * *

"68 (b). Any vessel which the quarantine officer considers infected.

"68 (c). If arriving at a port south of the southern boundary of Maryland in the season of close quarantine, May 1 to November 1, directly or via a Northern port, from a tropical American port, unless said port is known to be free from yellow fever."

"74. After a vessel has been rendered free from infection, it may be furnished with a fresh crew and released from quarantine, while all or part of the personnel are detained. Under these circumstances the quarantine officer must exercise the greatest care that the vessel shall not become reinfected, especially by contact with persons in quarantine or infected objects."

"102. For the purpose of these regulations, five days shall be considered as the period of incubation of yellow fever."

"104. For the destruction of mosquitoes there shall be a preliminary and simultaneous fumigation of all parts of the vessel by sulphur dioxide gas. In cabins containing articles liable to damage by sulphur dioxide, pyrethrum powder may be burned instead."

"106. The personnel of the vessel shall be detained five days from completion of disinfection, or if they have been removed before disinfection of the vessel, their detention shall begin from last possible exposure to infection.

"If cases of yellow fever have occurred aboard, the time of detention at stations south of the southern boundary of Maryland must be extended to six days."

We have held in the case of Tweedie Trading Co. v. George V. Emery Co., 154 Fed. 472, 84 C. C. A. 253, that a deficiency of men may be constructive, e. g., inability to work because of quarantine regulations; and in Clyde Commercial Steamship Co. v. West India Steamship Co. (C. C. A.) 169 Fed. 275, that a distinction between the vessel and her crew may be made for quarantine purposes. Such a distinction appears in the regulations under consideration. Under 68(b), 68(c), 74, and 104, a vessel may be rendered free from infection by fumigation and released, if a new crew be furnished; otherwise, she may be detained for five days longer for the purpose of observation of the personnel. The fumigation of this vessel was completed September 11th at 4 p. m., and the subsequent detention of five days was due entirely to the personnel. There was, therefore, a constructive deficiency of men within article 16 of the charter, which expressly causes hire to cease for that time. The exception in article 17 of the restraint of princes, rulers, and people does not apply to the categories mentioned in article 16, as we have held in the case of the Clyde Commercial Steamship Co., supra.

The District Judge held that the quarantine officer had no legal authority to subject the vessel to quarantine, and therefore that the detention was unlawful, within Northern Pacific Railway Co. v. American Trading Co., 195 U. S. 439, 25 Sup. Ct. 84, 49 L. Ed. 269. Under the view we have taken of the case this conclusion is immaterial; but the record shows that the officer had authority to detain the vessel under 68(b) if he considered her infected, and under 68(c) because she came from a tropical American port between May 1st and November 1st. The word "American" in the regulation cannot refer to the United States, which lies entirely above the tropics, but we think must be understood as referring to the continent of America or Western Hemisphere. Havana, the port from which the vessel came, is within the tropics; that is, the space between 23° 27′ north and 23° 27′ south latitude.

The decree is modified by directing the District Court to enter a decree in favor of the libelants for hire for 9½ hours; costs of District Court to libelants, and costs of this court to respondent.