NORTHERN S. S. CO., Limited, v. EARN LINE S. S. CO.

(Circuit Court of Appeals, Second Circuit. January 11, 1910.)

No. 113.

SHIPPING (§ 49*)—CHARTER HIRE—DETENTION OF VESSEL THROUGH ILLNESS OF MASTER.

> Where a vessel, under a time charter providing that, "in the event of loss of time from deficiency of men or stores * * * for more than 24 hours, the payment of hire shall cease until she be again in an efficient state to resume her service, * * * the act of God, * * * restraint of princes, rulers, and people * * * always mutually excepted," was refused clearance papers after her discharge on account of the illness of her master, which incapacitated him from performing his duties, and after she was cleared was obliged to put in at another port for the same reason, being detained in each case longer than 24 hours, the charterer was entitled to deduct from the hire for such time, but, in the absence of any provision in the charter therefor, was not entitled to deduct for port charges and expenses, cost of coal, etc., incurred during the delay which he was under the charter required to pay.

> [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 49.*
>
> Deductions and offsets from charter hire, see note to Tweedie Trading Co. v. George D. Emery Co., 84 C. C. A. 254.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Northern Steamship Company, Limited, against the Earn Line Steamship Company. Decree for respondent, and libelant appeals. Reversed.

For opinion below, see 169 Fed. 708.

This cause comes here upon appeal from a decree of the district Court, Southern District of New York, dismissing a libel brought by the owner of the steamship Saltwell to recover a balance of charter hire.

J. Parker Kirlin and Charles R. Hickox, for appellant.

Horace L. Cheyney, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The making of certain deductions from the charter hire was admitted. Part of the amount so deducted represented hire for a period while the vessel was in quarantine at Sagua, and also while she put into Havana to obtain medical assistance for the master and steward, who were alleged to be ill and unable to perform their duties. The balance of the amount deducted consisted of some small expenses incurred during the detention at Sagua.

The court disposed of the case on the authority of Tweedie Trading Co. v. George D. Emery Co. (D. C.) 146 Fed. 618, affirmed 154 Fed. 472, 84 C. C. A. 253. The provisions of the charter are practically the same as those construed in the case cited. Section 16 provides that, "in the event of loss of time from deficiency of men or stores * * * for more than 24 hours, the payment of hire shall cease until she be again in an efficient state to resume her service," and section 17,

"* * * the act of God, * * *  restraint of princes, rulers, and people * * * always mutually excepted." The charter also lets the vessel "with full complement of officers, seamen, engineers, and firemen for a vessel of her class."

The vessel arrived at Sagua October 3d, and her discharging was completed October 14th. She had no cargo to load. The captain had received instructions to proceed to Progresso, but at that time he and the steward were suffering from a severe attack of fever, in consequence of which the port authorities refused to allow the vessel to be cleared until the fever could be properly diagnosed. She subsequently obtained clearance and sailed October 17th. The captain's fever developed October 11th. He at once secured medical attendance; the doctor visiting him once and sometimes twice every day so long as he was in port. His illness did not interfere with the discharge of the cargo, and despite his condition he undertook to navigate the vessel when she left on the 17th; but he found himself very feeble, with a high temperature and no signs of improvement, and to secure further medical aid for himself, and also for the steward, he proceeded to Havana and after a delay there of 31 hours resumed the voyage. The deductions from hire are for the 3 days and 3 hours at Sagua and the 31 hours at Havana. The condition of the steward need not be considered. The master was an indispensable part of the ship's company. She could not properly proceed without him, and there was no one in Sagua to take his place.

We have so recently discussed the law governing this situation in the Tweedie Case, supra, and also in Clyde Commercial S. S. Co. v. West India S. S. Co., 169 Fed. 275, 94 C. C. A. 551, and Gow v. Gans Steamship Line (C. C. A.) 174 Fed. 215, that it is sufficient to say that we are satisfied from the record that from October 14th, when the discharge was completed, till he left Havana, the captain was not in such a condition of health as would warrant his prosecuting the voyage; that it was a prudent and proper act for him to secure medical attendance till he was sufficiently restored to health to resume the discharge of his important duties; and that during that period there was a constructive deficiency of officers, within the terms of section 16. We are not satisfied from the record that if there had been another competent captain available on October 14th, who was prepared to take his place, the port authorities would nevertheless have held the ship. The case seems, therefore, to fall within the rule laid down in the Tweedie Case.

We do not see, however, on what principle the port expenses at Sagua for coal, bunker survey, commission, and telegram, etc., $165.39, were deducted. The section provides merely that "the hire shall cease." There is no stipulation about coal, port charges, commissions, and all other charges, except the one contained in section 2, which provides that the charterers shall provide and pay for them.

The decree is reversed, and cause remitted, with instructions to decree in favor of libelant for $165.39, with interest, but without costs.