### THE YAYE MARU. THE WAR LARK. SUNA v. STRICK LINE. *

(Circuit Court of Appeals, Fourth Circuit. May 3, 1921.)

No. 1874.

1. **Shipping ⬡⟞49(3)—Charterer held entitled to off-hire under breakdown clause, though not then using vessel.**

Under a charter party requiring the owner to keep the vessel "in a thoroughly efficient state in hull, machinery and equipment for and during the service," and providing that, in the event of loss of time from breakdown or "any other cause preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost," where the vessel, after entering on the charter and while lying in port awaiting cargo, was injured in collision, which rendered her unseaworthy as to one hold for loading or carrying cargo, and she was taken by the owner and repaired, the charterer *held* entitled to off-hire until the repairs were completed, though he continued to keep her waiting for cargo for a considerable time thereafter.

2. **Collision ⬡⟞128—Loss of charter hire recoverable as damages.**

A chartered vessel, so injured in collision that the charterer was entitled to, and did, place her off-hire until repaired, *held* entitled to recover for such loss of earnings as an element of damages, measured prima facie by the charter hire lost.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit in admiralty for collision by A. Suna, master of the Japanese steamer Yaye Maru against the Strick Line, owner of the British steamer War Lark. From the decree, libelant appeals. Modified and affirmed.

For opinion below, see 265 Fed. 850.

George Forbes, of Baltimore, Md., George C. Sprague, of New York City, and John Phelps, of Baltimore, Md. (Hunt, Hill & Betts, of New York City, on the brief), for appellant.

---

William H. McGrann, of New York City (John M. Woolsey and Kirlin, Woolsey, Campbell, Hickox & Keating, all of New York City, and Janney, Stuart & Ober, of Baltimore, Md., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and SMITH, District Judge.

KNAPP, Circuit Judge. On November 5, 1919, the Japanese steamship Yaye Maru and the British steamship War Lark were at anchor in the harbor of Baltimore at a safe distance apart. About noon of that day, while a high wind was blowing, the War Lark dragged anchor and drifted down upon the Yaye Maru, damaging the latter to a substantial, though not serious, extent. The libel filed on behalf of the owner seeks recovery for this injury to the vessel, and also, as will presently be explained, for loss of time while she was undergoing repairs. The trial court found the War Lark solely at fault for the collision, and awarded appellant the sum of $3,081.40 for the physical damage sustained by the Yaye Maru. The appellee acquiesced in this finding and subsequently paid the amount awarded. The claim for detention was wholly rejected, and the libelant appeals.

[1] At the time of the accident the Yaye Maru was under a time charter containing the following provision, known as the "breakdown clause":

"That in the event of the loss of time from deficiency of men or stores, fire, breakdown, or damages to the hull, machinery, or equipment, grounding, detention by average accident to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost."

It is not seriously disputed that the injury to the Yaye Maru prevented "the full working of the vessel" until she was repaired. The learned District Judge said in the course of the trial:

"I do not think there is any real question that the No. 1 hold of that vessel was not seaworthy for the stowage of cargo under those conditions."

And this finding, as properly it may be regarded, is amply supported by the testimony. It is agreed by the parties that the time consumed in making needed repairs was 6 days and 3 hours. At the charter party rate the off-hire for that length of time would amount to $20,-514.63, and bunker coal was consumed meanwhile of the value of $230.70.

On November 10th the charterer notified the owner's agent that the vessel—

"should be placed off-hire from the time of collision until repairs have been completed, and she is again in an efficient state to resume my charter."

This claim was allowed by the agent, and off-hire deducted accordingly (in point of fact for 6 days, 4 hours and 50 minutes) on January 24, 1920, when the charterer paid over the hire which before had been in arrears.

The primary question is whether the charterer was entitled to this allowance for off-hire under the breakdown clause of the contract.

Could he have enforced it as a matter of right? The contention that he could not is based upon these facts: The Yaye Maru came to Baltimore for a cargo of coal, arriving there on the 1st of November. Prior to that date the government had placed an embargo on the export of coal, which was still in force, and in consequence the vessel could not then obtain her intended cargo. She was waiting in the Baltimore harbor when the accident happened, and she continued to wait there after the repairs were completed, until the embargo was lifted about the middle of the following January. From this it is argued that the owner was not obliged to allow the off-hire demanded, because the charterer would have done nothing with the vessel during the time required for repairs, and therefore suffered no delay or loss of service as the result of the collision. Granted, it is said, that the injury was sufficient to prevent "the full working of the vessel," she nevertheless was not rendered unfit for the only use made of her, namely, to await the lifting of the embargo, and this being so, the charterer had no valid claim for an off-hire allowance. ·

No case is cited which goes to the extent of this contention, and the trend of authority seems clearly opposed to it. We are not here dealing with a claim for demurrage, which ordinarily depends upon loss of earnings occasioned by some delay, but with the rights of the parties under the contract which they have voluntarily made. The owner of the Yaye Maru undertook to keep her "in a thoroughly efficient state in hull, machinery and equipment for and during the service," and agreed that the stipulated hire should cease for the time lost by an injury, such as actually happened, which prevented "the full working of the vessel." The collision put her in an unseaworthy condition, at least as to No. 1 hold, and until the repairs were completed she was not "in a thoroughly efficient state" for receiving or carrying cargo. When the accident occurred the owner met the contract obligation by taking over the vessel and repairing her without unnecessary delay, and at a cost the reasonableness of which is not here questioned. ·Having done this, can the owner defeat the claim for off-hire by saying that the charterer would not have used the ship, if she had not been injured, and therefore has sustained no loss? Was the charterer bound to pay hire for the time she was not in full working order, because, and solely because, he was holding her idle in Baltimore at the time she was hit, and apparently intended to keep her there, as in fact he did, until the desired loading could be obtained?

But waiting for cargo was not the only use to which the vessel could have been put. She had enough coal in her bunkers to take her to Rotterdam, and the charterer was free within broad limits to employ her in such service as he saw fit. If he preferred to do nothing with her while the embargo lasted, was it any concern of the owner? Surely, the right to off-hire, otherwise existing, was not lost by nonuser. The injury impaired the power to use, by destroying to a degree the "thoroughly efficient state" in which the vessel was agreed to be kept, and when that happened, and for such time as it continued, the charterer became entitled to off-hire, whatever permissible use he was then

making of the vessel, or whether he was using her at all. He could not be held for hire when the power to use was taken away.

. The "loss of time" provided for in the charter party means the time during which the vessel was not in "full working" order as the result of an injury, and for that time the charterer was released from the payment of hire, although he would have made no use of her if she had not been disabled. It cannot be that he was bound to pay for a vessel he could not use, merely because he deemed it for his interest to keep her out of use. His right to off-hire did not depend upon loss of profits, but upon the fact that the vessel was not in a "thoroughly efficient" condition. Besides, as already mentioned, on notice of the accident and claim of off-hire, the owner took such possession of the vessel as was needful for making repairs, and that possession necessarily deprived the charterer of any use of her which otherwise he might have made. In that situation, and while it existed, the owner's right to compensation was suspended by the terms of the contract.

To review the many cases of more or less similarity would unduly expand this opinion and serve no useful purpose. None of them is directly in point, but the views above outlined are supported, as we think, by the following, among other, decisions: The Mediana, A. C. 113; La Compania Bilbaina, etc., v. Spanish-American L. & P. Co., 146 U. S. 483, 13 Sup. Ct. 142, 36 L. Ed. 1054; Strong v. United States, 154 U. S. 632, 14 Sup. Ct. 1182, 24 L. Ed. 664; Ronalds v. Leiter, 109 Fed. 905, 48 C. C. A. 708; Lake Steam Shipping Co. v. Bacon (D. C.) 129 Fed. 819; Munson Line v. Miramar S. S. Co. (D. C.) 150 Fed. 437; Gow et al. v. Gans S. S. Line, 174 Fed. 215, 98 C. C. A. 223; Northern S. S. Co. v. Earn Line, 175 Fed. 529, 99 C. C. A. 151; The Canadia, 241 Fed. 233, 154 C. C. A. 153.

The case of Hogarth v. Miller, [1891] A. C. 48, cited by the court below, and apparently much relied upon by the appellee, seems clearly distinguishable. In that case the injury was to the vessel's engines, which affected her navigability, but not her seaworthiness, as respects the carrying of cargo. There, as here, the owner undertook the exclusive operation of the vessel; the charterer having exclusive control of the cargo and of its loading and unloading. The charterer was allowed off-hire for the loss of time caused by the engine trouble, which delayed the voyage, but not for the time the vessel was discharging cargo at destination, because, as was said, whilst lying at the dock for unloading she was efficient "with reference to the particular employment demanded of her at the time"—that is to say, for the only use that the charterer could then make of her—which is plainly a different situation from the one here presented.

Moreover, in that case the breakdown clause suspended hire, if the vessel were injured, "until she be again in an efficient state to resume her service," and it was held that the vessel was in an efficient state for discharging cargo; the charterer having full use of her for that purpose, although her engines were being repaired at the same time. But this decision, holding the charterer liable for hire while unloading, was expressly placed on the language of the breakdown clause, and the Lord Chancellor virtually says that the ruling would have been the other way,

if the contract had provided for off-hire "until such time as the deficiency of men or stores has been removed, or the breakdown of the machinery has been set to rights, or the want of repairs has been supplied, or the damage has been remedied," or "upon the vessel being restored to full efficiency in all respects, as to seaworthiness and otherwise as she was at the time when she was originally handed over."

In the instant case, as above shown, the owner agrees to "keep the steamer in a thoroughly efficient state in hull," as well as machinery and equipment, and to abate hire for the detention by average accidents to ship or cargo, "or by any other cause preventing the full working of the vessel." These provisions, in our opinion, have practically the same meaning as those which, as the Lord Chancellor apparently assumed, would have led to a different conclusion in Hogarth v. Miller, had they been found in the contract there considered, and that case may therefore be regarded as sustaining, rather than opposing, the appellant's contention.

The same may be said of Lake Steam Shipping Co. v. Bacon (D. C.) 129 Fed. 819, affirmed without opinion 145 Fed. 1022,[1] where the contract suspended hire in case of injury to the vessel "until she be again in an efficient state to resume her service," the identical language used in Hogarth v. Miller, supra. Following that case, the court allowed off-hire for the delay caused by stranding, which the owner conceded, but required the charterer to pay for the time consumed in discharging cargo at destination, because the vessel was then fully efficient for that service.

To the like effect is Steamship Knutsford Co. v. Barber & Co. (C. C. A.) 261 Fed. 866. In that case also the charter party provided for suspension of hire "until she shall be again in an efficient state to resume her service," though it did not include "detention by average accidents to ship or cargo." It was held that the time required to examine and restow a portion of the cargo, after an accident, was not "loss of time" within the meaning of the breakdown clause, because "the charterer was using the ship at that time for a purpose which, though it necessarily delayed her, was still his own, and was not due to any 'damage' to the ship."

It will thus be seen that all these cases deal with a breakdown clause materially different from and more favorable to the owner than the one under review, yet none of them goes further than to hold the charterer liable for hire if and when he actually uses the vessel to perform a service for which she is fully efficient, such as unloading, although in other respects she may not be in the condition called for by the contract. In the case at bar, however, not only did the charterer make no use of the vessel during the 6 days and 3 hours in question, but for that period of time she was not available for use by him because of the injury she had received. It is therefore quite incorrect to say that the Yaye Maru, while undergoing repairs, performed the only service that was or could be required of her, namely, waiting for cargo, when she was not fit and able, not in a "thoroughly efficient state," to take it on board. The charterer contracted to pay hire for the time she could be used, as a vessel in "full working" order, for any service

[1] 74 C. C. A. 476.

he might desire, but not for the time she happened to be disabled without fault on his part. In short, we think it not doubtful that the charterer was entitled as a matter of contract right to the off-hire claimed and allowed, and that appellant had no defense thereto.

[2] Little remains to be said. If the owner of the Yaye Maru was bound to allow the off-hire in dispute, it was an element of the damage caused by the wrongful act of the War Lark, and the latter must respond. The injury deprived the owner of earnings which otherwise would have been received, and that loss measures, prima facie at least, the amount which the owner is entitled to recover. The Argentino, 14 A. C. 519; The Bulgaria (D. C.) 83 Fed. 312; The North Star, 151 Fed. 168, 175, 80 C. C. A. 536. As this appears to be the settled rule of law, and is not seriously controverted by the appellee, it need not be made the subject of discussion.

The decree appealed from will be modified by directing a decree in favor of appellant for the additional sum of $20,514.63, the off-hire for 6 days and 3 hours, and for $230.70, for bunker coal consumed during the off-hire period, with interest on the aggregate amount from January 24, 1920, and the costs of this appeal.

Modified.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes